[No. 15884. Department Two. June 23, 1920.]

EDWIN FULLER NUDD et al., Appellants, v.
OWEN A. ROWE et al., Respondents.[1]

JOINT ADVENTURES—ACCOUNTING — CONTRACT — PERFORMANCE OR BREACH. An action for an accounting and to quiet title to land should be dismissed as unsustained, where plaintiffs and defendant had entered into an agreement whereby defendant advanced the money to redeem the land from foreclosure and liens, taking a mortgage and deed, the parties agreeing that defendant should have absolute control of its platting and sale, and, after all expenses were paid, sixty per cent of the net profits, and it appeared that defendant had not failed in any duty and that it had as yet been impossible to sell the land so as to obtain return of the money or any profits.

Cross-appeals from a judgment of the superior court for Lewis county, Reynolds, J., entered February 19, 1920, upon findings favorable to the defendants, dismissing an action for equitable relief, tried to the court. Affirmed.

[1] Reported in 190 Pac. 902.

*W. F. Hays,* for appellants.

*John P. Gallagher* and *Edward Judd,* for respondents.

Tolman, J.—In February, 1917, the appellant Edwin Fuller Nudd was the owner of a tract of land, consisting of approximately 4.19 acres, situated near the business center of the city of Centralia, but one block from the main street of the city, wholly unimproved except for an old frame warehouse building and certain fruit trees which were situated thereon. A mortgage for a considerable amount upon this property had been foreclosed, a number of judgments had been rendered against appellant which were liens thereon, and appellant's equity of redemption in the land was about to be lost by reason of the expiration of the statutory redemption period. The land was also subject to taxes and assessments, delinquent and unpaid, the whole of the encumbrances at that time aggregating approximately $15,000. For the purpose of saving something out of the property, the appellant sought to obtain a loan in an amount sufficient to pay off the liens against the property, which would enable him to make redemption and retain the title subject only to the lien of such new loan. After considerable unsuccessful effort, appellant was led, by reading an advertisement, to go to respondent Owen A. Rowe, and succeeded in interesting him so that the parties entered into the following arrangement: Appellant made an application to respondent for a loan of $15,000, to be secured by mortgage, in which application he agreed to pay a commission of $1,000 for obtaining the loan. He, together with his wife, executed twelve notes for $1,000 each, and six notes for $500 each, all bearing date March 10, 1917, and executed a mortgage on the same date upon the property, which, by its terms, secured

the payment of the eighteen notes referred to, all of which bore interest at the rate of seven per cent per annum, payable semi-annually, and matured in five years after date. Thereupon, and as a part of the same transaction, the appellant and his wife, by a deed, conveyed the property to respondent Owen A. Rowe, subject only to the $15,000 mortgage just mentioned, and the parties entered into the following agreement in writing:

"In consideration of Edwin Fuller Nudd and Jennie Nudd, his wife, conveying to Owen A. Rowe this day a certain tract containing 4.19 acres of land, situated in Centralia, Lewis county, Washington:

"It is understood and agreed by and between the parties signing this agreement, that Owen A. Rowe is to have absolute control of and is to use his best endeavors in the management and sale of said land, leaving it optional with him as to platting into lots and disposition of same; that all expenses incurred in taking care of the principal and interest on one certain mortgage of fifteen thousand ($15,000) dollars, this day executed by said Edwin Fuller Nudd and Jennie Nudd, his wife, to said Owen A. Rowe, together with taxes, assessments and all other expenses incidental to the platting of said property and sale of the same, allowing a reasonable amount for advertising said property, and commission on sale of said property shall be first deducted from the proceeds of the moneys received from sale or sales therefrom, after which the net proceeds shall be divided at the rate of forty per cent (40%) to Edwin Fuller Nudd and Jennie Nudd, his wife, and sixty per cent (60%) to Owen A. Rowe.

"In other words, all expenses and charges against said property and all expenses incurred and to be incurred in connection with the handling and disposing of same to be first paid, and thereafter the net proceeds to be divided as above stated. Dated this 10th day of March, 1917.          Edwin Fuller Nudd,
"Jennie Nudd,
"Owen A. Rowe."

Respondent caused the mortgage and deed to be duly recorded and, immediately upon the closing of the transaction, proceeded to Centralia, and on March 12, 1917, paid out in redemption from the judgment sale of the property $3,100.92, and in satisfaction of certain judgments which were liens, $266.82, $86.20, and $23.10. Thereafter, on July 12, 1917, respondent paid to redeem from the mortgage foreclosure $10,480.22, and on May 31, 1918, paid in satisfaction of a special assessment which was a lien upon the property $718.55. General taxes which were then a lien were not paid, and, at the time of the trial below, evidence was introduced showing that the 1916 general taxes amounting to $386, the 1917 taxes amounting to $408, and the 1918 taxes amounting to $443, with interest on each, were delinquent and unpaid, as well as a local improvement assessment for $232.35. Appellants, in their complaint, in addition to alleging the foregoing facts, allege that the respondent represented that he was possessed of ample means of his own to take up and discharge all of the liens against said lands, would do so within a reasonable time, and that he would plat the property into lots, advertise the same for sale, and thus realize for appellants upon their interest in the property. They further allege a total failure to plat or sell; that respondent is misrepresenting the value of the property in order to prevent a sale and to defeat the purpose of the agreement heretofore set forth, and they pray for an accounting and for the cancellation of the warranty deed, mortgage and promissory notes, that title to the property be quieted in them, and for general relief.

By way of an answer and cross-complaint, respondents, after appropriate denials of all allegations of misconduct, allege that the transactions hereinbefore referred to created a partnership, and pray for an ac-

counting, that the partnership be dissolved, the real estate sold under order of the court, the proceeds devoted to the payment of the indebtedness of the partnership, and any surplus be divided in proportion of forty per cent to the appelants and sixty per cent to the respondents. From that part of the judgment dismissing the complaint and the cause of action therein set forth, without costs, appellants appeal, and likewise from that part of the judgment dismissing the cross-complaint and the cause of action therein set forth, without costs, the respondents appeal.

In addition to the facts hereinbefore set forth, it appears from a careful examination of the record that the respondent has, since the execution of the notes and mortgage referred to, sold the notes to his customers, none of whom are parties hereto, and has, since negotiating the notes, paid five semi-annual interest payments thereon, each aggregating the sum of $525, so as to keep the notes in good standing and prevent a default. He has likewise received some small amounts from renting the property for circus and exhibition grounds, paid out some small items for advertising and the like, in addition to those hereinbefore mentioned, and submits an account of which the first item is $1,000 commission for obtaining the loan, which, whether this item be considered or not, shows that he has paid out more money on account of the property than he has received from the sale of the mortgage notes and rentals. At the trial, it was attempted to be shown that respondent had disposed of the building on the property for a matter of $9 or $10, when it was really worth $800 or $900, and caused or permitted twenty-six fruit trees to be cut down and removed from the land, which one witness says were, or might have been, worth $100 per tree. In view of the terms of the contract, which gives to respondent

absolute control of the property, it is sufficient to say that, from the evidence as a whole, it does not appear that respondent acted in bad faith in disposing of the building and in permitting the cutting down of the trees. If he erred therein it was an error of judgment, and even that will not appear until the property is sold. So, manifestly, he cannot now be held accountable therefor. The evidence entirely fails to show that there has ever been a time since the inception of this transaction when respondent could have sold the property for sufficient to meet the encumbrances. Indeed, it is to be gathered from the record that the property lies near enough to the center of the city to be somewhat undesirable for residence purposes, and yet not within the business district and desirable for business purposes, and its value is uncertain and speculative.

Notwithstanding the interesting argument presented as to the fair dealing which equity requires of one who acts as trustee, we find nothing in the record which indicates that the respondent has so far failed in any duty which he owes to the appellant, or that any facts are shown which entitle the appellants to any part of the relief asked for in their complaint, or any relief at this time. It might be that issues could be framed, if appellants should elect to so proceed and proof could be adduced, which would warrant a court of equity in finding that the property cannot be sold in the manner contemplated by the agreement between the parties, in which event the court might, upon the prayer of appellants, direct a judicial sale and accounting. But we cannot think that the respondent is entitled to ask for that relief under the conditions shown. The intent of the contract, hereinbefore set forth, in the light of what was contemplated by the parties at the time it was entered into, seems to be that

the respondent shall carry the property until such time as a sale may be made which will net at least the amount of the encumbrances, and since appellants have no right of control, enjoyment of the use, or right to fix the price, or even to be consulted with reference thereto, we see no element of partnership except the division of the net proceeds as provided in the contract, which division is entirely consistent with the relation of principal and agent, trustee and *cestui que trust*, grantor and grantee, and other possible relations. In any event, no breach is shown on the part of the appellants, or either of them, which would justify the granting of any relief to the respondents.

The judgment of the trial court was right and is affirmed.

Since both parties have appealed, neither will recover costs on this appeal.

Holcomb, C. J., Mount, Fullerton, and Bridges, JJ., concur.